IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL MAURICE ARCHIE,
    Plaintiff,

vs.                                            Case No.: 3:04cv409/RV/EMT

ESCAMBIA COUNTY SHERIFF'S OFFICE, et al.,
    Defendants.

## **REPORT AND RECOMMENDATION**

       This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 8).  Leave to proceed in forma pauperis has been granted (*see* Doc. 4).

       On May 3, 2005, the undersigned issued a Report and Recommendation recommending that this action be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (Doc. 11).  In recommending dismissal, the undersigned relied upon facts which, while contained in documents attached by Plaintiff to his complaint, were not alleged in the complaint.  The district court issued an order remanding the case to the undersigned with instructions to provide Plaintiff notice that the court is considering materials outside the pleadings (*see* Doc. 14).

       Accordingly, Petitioner was notified that the court would consider the materials submitted by Plaintiff with his amended complaint, and he was provided twenty-one (21) days to submit any additional relevant evidence and argument (*see* Doc. 19).  Additionally, Plaintiff was cautioned that only those pleadings and evidentiary materials currently in the record or filed in accordance with that order would be considered by the court (*id.*).  In response, Plaintiff submitted his own affidavit (Doc. 21).

       Plaintiff names three Defendants in this action, Ron McNesby, Sheriff of Escambia County, Gail Graber, a correctional officer at the Escambia County Jail ("Jail"), and "John Doe," a physician

at the Jail. Plaintiff claims Defendants violated his Eighth Amendment rights by failing to protect him from an attack by another inmate and failing to provide adequate medical treatment for injuries he suffered as a result of the attack. Plaintiff seeks monetary damages.

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). A complaint is frivolous under section 1915(d) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," Id. at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997). Upon review of the complaint, the court concludes that dismissal of Plaintiff's claims is warranted.

Plaintiff alleges the following facts in support of his claims. On April 16, 2003, while incarcerated at the Jail, Plaintiff was attacked by Inmate Kenneth Wildberger (*see* Doc. 8, Statement of Facts, ¶ 1; Doc. 21 at 1). On that date, Plaintiff returned to his "quad" after visitation and was approached by Inmate Wildberger, who accused him of telling correctional officers that Wildberger had poured water into the television (Doc. 8, ¶ 2). Plaintiff essentially denied the accusation, and Wildberger became very aggressive, stating that he would kill someone for "telling on him" (*id*., ¶ 3). At that point, Defendant Graber, the shift supervisor, entered the quad, "counseled" Wildberger regarding his outburst, and removed the television (*id*., ¶¶ 4, 5). As Graber left the quad, he stated, "Wildberger, I'm going to stop you. That's if someone in here with you doesn't stop you first. And if they do, I promise you that I didn't see a thing" (*id*., ¶ 5). After Graber left the quad, Inmate

Wildberger again became enraged and threatened other inmates, but then calmed down upon the inmates returning to their cells (*id.*, ¶ 6; Doc. 21, at 2).

Shortly thereafter, Plaintiff was sitting at a dining table with his back to Inmate Wildberger, when he was attacked by Wildberger with a weapon (Doc. 8, ¶ 7; Doc. 21 at 2). Other inmates intervened and alerted correctional officers to the attack, and Plaintiff was escorted to the emergency room at the Jail (Doc. 8, ¶ 8; Doc. 21 at 2). Defendant Graber was present in the emergency room and encouraged Plaintiff to file a criminal report of the incident because Plaintiff was the third inmate to be attacked by Wildberger (Doc. 8, ¶ 8; Doc. 21 at 2-3). When Plaintiff asked Graber why he did not "do something" with Wildberger earlier at the quad, Graber responded that he would not allow Wildberger back into open population (Doc. 8, ¶¶ 9, 10; Doc. 21 at 3).

Plaintiff suffered four serious lacerations as a result of the attack (Doc. 8, ¶ 11; Doc. 21 at 3). He was treated by prison medical staff, including the unidentified physician named as a Defendant, with staples and sterilized medical strips and placed in the infirmary under observation for twenty-three (23) hours (Doc. 8, ¶¶ 11, 12; Doc. 21 at 3). While in the infirmary, at approximately 6:00 p.m., Plaintiff requested pain medication from a nurse (Doc. 8, ¶ 12; Doc. 21 at 3). The unidentified nurse responded that she would provide him with pain medication; however, she did not (*id.*). When the next shift of nurses came on duty, another unidentified nurse checked and changed Plaintiff's wound dressing (Doc. 21 at 3). Plaintiff again requested pain medication (*id.* at 4). The nurse consulted Plaintiff's medical chart and within twenty (20) minutes told Plaintiff that medical staff had put medication for Plaintiff on a cart which had been sent to Plaintiff's cell in open population (*id.* at 4). The nurse told Plaintiff she would revisit him (*id.*). Shortly after that conversation, Plaintiff was returned to open population (Doc. 8, ¶ 13; Doc. 21 at 4). Upon his return to open population, Plaintiff asked another unidentified nurse to check the cart for his pain medication (*id.*). Upon her doing so, she informed Plaintiff that there was no medication on the cart for him; further, she could not give him pain medication without a doctor's consent (*id.*).

For six days following the attack, Plaintiff requested pain medication from nurses making rounds and from nurses in the clinic who daily cleaned and dressed his wounds (Doc. 8, ¶¶ 14, 15; Doc. 21 at 4). The nurses responded that Plaintiff did not have a prescription for pain medication or Ibuprofen, but they would schedule an appointment for Plaintiff to see a doctor (Doc. 8, ¶ 15).

On April 22, 2003, Plaintiff was examined by the Defendant doctor (*id*.; Doc. 21 at 4). When Plaintiff complained of pain, the doctor stated he thought he had prescribed pain medication, but the medical staff must have erred; therefore, the doctor prescribed pain medication (Doc. 8, ¶ 15; Doc. 21 at 5).

Plaintiff contends Defendant Graber knew Inmate Wildberger posed an excessive risk of physical harm to other inmates and failed to protect Plaintiff from the risk, in violation of the Eighth and Fourteenth Amendments (Doc. 8, Statement of Claims, ¶ 1). Additionally, he contends the attending physician demonstrated "gross negligence" and violated his Eighth and Fourteenth Amendment rights by failing to initially prescribe pain medication, causing Plaintiff to experience pain for six days until he was again seen by the physician and prescribed pain medication (*id*., ¶ 2). Finally, he alleges Sheriff McNesby failed to implement an adequate procedure for handling violent inmates and failed to adequately train staff, in violation of the Eighth and Fourteenth Amendments (*id*., ¶ 3; Statement of Facts, ¶ ¶ 16, 17).

To state a claim for cruel and unusual punishment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting Wright v. El Paso County Jail, 642 F.2d 134, 136 (5th Cir. 1981)). "An official's deliberate indifference to a known danger violates inmates' Eighth Amendment rights." McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citations omitted); McCoy, 47 F.3d at 407 ("'When officials become aware of threats to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.'") (citation omitted). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety. Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct.

at 1979. Proof that a defendant should have but did not perceive a risk is insufficient. *Id.* at 838, 114 S.Ct. at 1979 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999). Whether an officer had the requisite knowledge of a substantial risk may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. Farmer, 511 U.S. at 842, 114 S.Ct. at 1981.

Furthermore, "[f]or a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 835, 114 S.Ct. at 1977. The risk of attack must have been substantial, beyond mere possibility. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam), *cert. denied*, 496 U.S. 928 (1990). Absent special circumstances, general hostilities exhibited by prisoners do not alone amount to a "substantial risk of serious harm." *See* Brown, 894 F.2d at 1537 (finding defendants informed of "racial problem" in victim's cell not liable). Correspondingly, a negligent failure to protect an inmate does not state a claim under section 1983. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Furthermore, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 114 S.Ct. at 1982-83.

Thus, in order to demonstrate liability, Plaintiff must produce sufficient evidence of a substantial risk of serious harm, and he must also show that Defendants were deliberately indifferent to that risk. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). Additionally, causal links must be established between Defendants' deliberate indifference and the substantial risk to Plaintiff, as well as between the risk to Plaintiff and his actual injury. *Id.*

In the instant case, Plaintiff alleges Defendant Graber was aware that Inmate Wildberger had attacked other inmates on two prior occasions. In support of his allegation, Plaintiff refers the court to disciplinary reports attached to the complaint involving Inmate Wildberger (*see* Doc. 1, Exs. C-1-13). However, the only incidents of attacks on other inmates that occurred prior to the attack on Plaintiff were in March and April of 2002, one year prior to the attack on Plaintiff (*id.*, Ex. C-5, C-6). As a result of the attacks, Inmate Wildberger was placed in disciplinary confinement for fifteen

(15) and thirty (30) days, respectively (*id*.). Furthermore, on the day of the attack on Plaintiff, upon observing Wildberger's aggressive behavior, Defendant Graber counseled Wildberger and warned that such behavior would not be tolerated by him or other inmates. Moreover, Plaintiff concedes that the situation had calmed just prior to the attack. At most, these facts establish Defendant Graber was aware of the possibility that Wildberger may attack another inmate, but not a substantial risk of such an attack. Furthermore, the facts show that correctional officers reasonably responded to the prior incidents, and Defendant Graber responded to Wildberger's aggressive behavior in a reasonable manner by counseling him and warning that such behavior would not go unpunished. Given these facts, Plaintiff cannot establish that Defendant Graber was aware that Inmate Wildberger posed a substantial risk of serious harm to other inmates, and that he knowingly disregarded that risk. Accordingly, Plaintiff's claim against Defendant Graber should be dismissed.

Additionally, Plaintiff has failed to state a constitutional claim of inadequate medical treatment. Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176,

1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see* Farmer, 511 U.S. at 834, 114 S.Ct. at 1977 (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06, 97 S.Ct. at 291-92 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105, 97 S.Ct. at 291. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff has failed to show the medical staff acted with deliberate indifference to his medical needs. Plaintiff acknowledges he received treatment for his injuries, including staples, medical strips, medical observation, daily cleaning of his injuries, and a prescription for pain medication after he complained of pain and received a second consultation with the Defendant physician on April 22, 2003. Furthermore, in his affidavit, Plaintiff concedes the

doctor stated he believed he had prescribed pain medication for Plaintiff, but Plaintiff did not receive it due to an error by staff. Indeed, the medical records submitted by Plaintiff (*see* Doc. 8, Ex. A-6, A-8), show he was prescribed Tylenol 3 on April 16. Additionally, the fact that a delay of five days occurred between Plaintiff's complaints to nurses upon his return to the general population and his appointment with the physician on April 22, 2003, is insufficient to establish the physician or nurses knew that the delay posed a substantial risk of serious harm to Plaintiff and deliberately ignored the risk under circumstances that were more than mere negligence. Thus, Plaintiff's claims against the Defendant physician should be dismissed.

Finally, Plaintiff's allegations as to Sheriff Ron McNesby are insufficient to support a basis for liability. Plaintiff does not allege Sheriff McNesby personally participated in the alleged constitutional violations, rather, he asserts Sheriff McNesby failed to implement a sufficient procedure for handling violent inmates to ensure the safety of other inmates (Doc. 8, Statement of Facts, ¶¶ 16, 17). He additionally suggests McNesby's employees were not properly trained (*id.*, ¶ 16).

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly

violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

While it is true that a governmental entity or jail supervisor may be held liable when its policies create or ignore an excessive risk of violence among its inmates, there must be a sufficient nexus between the policy of indifference and the resultant harm. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027-28 (11th Cir. 2001). A sufficient nexus was established in Marsh where, for example, it was alleged that the county knew there were no operable locks on some of the cell doors, that the inmates freely roamed the cellblock with weapons they were able to fashion from the jail's dilapidated fixtures, and there was little or no supervision or surveillance from the staff. *Id.* Similarly, before the court in Hale v. Tallapoosa County, 50 F.3d 1579, 1582-83 (11th Cir. 1995), were factors such as overcrowding to the extent that thirteen-by-twenty foot cells often housed thirteen or more inmates, some of whom were forced to sleep on the floor; understaffing and inadequate staff training; inadequate supervision of inmates; failure to segregate the violent inmates; allowing inmates to choose their own cells; and a resulting regularity of inmate-on-inmate violence serious enough to require hospitalization.

By contrast, Plaintiff in this case states only in the most general of terms that the procedure for handling violent inmates was inadequate to protect other inmates (*see* Doc. 8, Statement of Facts, ¶ 17). However, he does not allege facts showing that any policy or procedure of Sheriff McNesby

exposed Plaintiff or other inmates to a substantial risk of serious harm; nor does he allege facts showing a causal connection between any such policy and the attack on Plaintiff.

Additionally, in cases like the instant case where Plaintiff alleges a failure to train, Plaintiff must show Sheriff McNesby made a deliberate choice not to properly train correctional officers. *See* City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); McDowell v. Brown, 392 F.3d 1283, 1292 (11th Cir. 2004). "[A] 'showing of simple or even heightened negligence is not enough.'" McDowell, *supra* (quoting Bd. of County Com'rs v. Brown, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

> [T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove than an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.
> \* \* \*
> Moreover, for liability to attach in this circumstance the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury.

Canton, 489 U.S. at 391, 109 S.Ct. 1197.

In the instant case, Plaintiff does not allege facts showing the existence of a policy of improperly training correctional officers or medical staff. Furthermore, Plaintiff fails to allege facts showing that inmate attacks and instances of medical staff's failure to provide adequate pain medication were "persistent" or "widespread." Moreover, he does not identify a deficiency in Sheriff McNesby's training program that allegedly led to his injury. Accordingly, he has failed to state a constitutional claim against Sheriff McNesby.

For the aforementioned reasons it is respectfully **RECOMMENDED**:

1. That this action be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That the clerk be directed to close the file.

At Pensacola, Florida this 3rd day of August 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).